FRED COLLISON, Admr., Appellee, *vs.* THE ILLINOIS CEN-
TRAL RAILROAD COMPANY, Appellant.

*Opinion filed April 23, 1909.*

1. TRIAL—*when four jurors are accepted by both parties plain-
tiff must go ahead with next four.* Under the statute the plaintiff
should pass upon the jurors until four are accepted and tendered
to the defendant, who must then pass upon the jurors until four
are accepted and tendered back; and while the plaintiff is not re-
quired to tender a second panel of four to the defendant before the
latter has tendered back the first four, yet when four are accepted
by both sides the plaintiff must go ahead with the next four.

2. EVIDENCE—*the fact that certificate to ordinance is not dated
is not ground for excluding ordinance.* Where the clerk's certifi-
cate to an ordinance shows when the ordinance was passed and
published, and is complete in every way except that it has no date,
the want of a date is not ground for excluding the ordinance.

3. SAME—*when bulletins stating time of arrival of trains are
admissible.* Bulletins showing the time of the arrival of freight
trains at the station where plaintiff's intestate was killed are ad-
missible in evidence without proof that the deceased knew their
contents, where they show that a certain freight train carried pas-
sengers having mileage tickets, and where it is proven that deceased
had such a ticket in his pocket and had gone to the station to be-
come a passenger on such train.

4. RAILROADS—*giving signals does not exonerate company from
charge of violating speed ordinance.* The fact that signals of the
approach of trains are given does not exonerate the railroad com-
pany from the charge of running its trains through the limits of
an incorporated city, town or village at a rate of speed in excess of
that permitted by ordinance.

5. NEGLIGENCE—*instinct of self-preservation raises no general
presumption in favor of due care.* The instinct of self-preservation
raises a presumption against an affirmative act tending to destroy
life, such as suicide, and raises a presumption as to the conduct of
a person where there is a known danger to be avoided, but it does
not raise a general presumption in favor of the exercise of due care
against unperceived dangers.

6. SAME—*proof of due care where there are no eye-witnesses.*
Where there are no eye-witnesses to the killing of a person, his
administrator, in an action for damages, may establish the exer-
cise of ordinary care on the part of the deceased by the highest
proof of which the case is capable, including the habits of the de-

ceased and facts and circumstances from which the jury may right-fully find that he was exercising such care.

7. SAME—*person cannot presume a fact against his own knowl-edge.* While a person may presume that a railroad company will not violate the law unless he knows the contrary, yet he cannot presume a fact against his own knowledge, and if he knows that a regular train habitually runs through a town at a high rate of speed he cannot presume that it will not do so.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

CLOUD & THOMPSON, (JOHN G. DRENNAN, of counsel,) for appellant.

F. M. & H. I. GREEN, and ACTON & ACTON, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The Illinois Central railroad runs in a south-westerly direction through the village of Thomasboro, in Champaign county. There are double main tracks,—the west track for south-bound trains and the east track for north-bound trains,—and there is a switch track east of them, on the east side of which there are two elevators and some lumber sheds and coal houses. The station building is on the west side of the tracks and the village is on the east side. Between the two main tracks is a platform for passengers taking north-bound trains. There is no street across the right of way, but the railroad company maintains a sidewalk between the depot platform and the business street east of the right of way. On December 26, 1905, there was a north-bound stock train due at Thomasboro at about eight o'clock in the evening, which stopped for passengers when signaled and also to let off passengers or take up stock cars. There was also a passenger train, known as the Nashville Special,

due to pass Thomasboro, going south, at about 8:30 o'clock in the evening but which did not stop there. On that evening Harry Collison was at Thomasboro and intended to take the stock train to his home at Rantoul, a station north of Thomasboro. He spent a good part of the evening at a store kept by Charles Kelso, east of the right of way, at the east end of the sidewalk and north-east of the station building. Collison was waiting for the stock train, which was late, and went out occasionally to look for it. At about 8:30 o'clock he left the store, saying that he would take another peep for his train, and he was seen going along the sidewalk toward the tracks. The stock train was approaching from the south, running slowly and preparing to stop to take up a stock car. In a very short space of time after Collison was last seen going toward the tracks the Nashville Special reached the station, running at from forty to sixty miles an hour, in violation of an ordinance of the village limiting the speed of passenger trains to fifteen miles an hour. That train had been running only a few weeks and was comparatively a new train. The engines of the two trains passed each other somewhat north of the sidewalk crossing. The distance from Kelso's store to the passenger platform was about one hundred and eighty feet and the walk led across the tracks to the station platform. Collison was not seen by any one after he reached the tracks, unless the fireman and head brakeman of the stock train saw him on the depot platform as that train came into the station. They were unable to identify him but saw someone on the platform going south. Collison was struck by the fast passenger train at some place along the passenger platform not definitely ascertained and was thrown a considerable distance and instantly killed. Blood spots were found on the baggage platform near the north end and between the rails of the track, and his cap laid some distance north of the body. He was a banker, and was cashier of a bank at Rantoul and general manager of a private bank at Thomasboro.

He was entirely sober and in the best of health and was habitually very careful and cautious about his conduct and his person. His administrator brought this suit in the circuit court of Champaign county to recover damages sustained by his widow and children, and upon a trial there was a verdict and judgment for $8000, but the judgment was reversed by the Appellate Court for error in giving instructions and the cause was remanded for another trial. The second trial resulted in a verdict for $10,000, upon which judgment was entered, and the Appellate Court affirmed the judgment.

In presenting their numerous complaints concerning rulings of the trial court counsel have not followed in an orderly manner the events of the trial, but, beginning with the instructions, have gone back to the evidence and the empaneling of the jury, winding up with the statement that there was no proof of the exercise of care by the deceased. We have found it quite inconvenient and confusing, in reading the abstract in connection with the argument, to be compelled to go back and forth through the abstract to find the matters complained of.

The first thing which occurred on the trial which is claimed to be an error is that the court, in empaneling the jury, compelled the defendant to examine and pass upon the second panel of four jurors before the same were examined and accepted by the plaintiff. The statute provides that the jury shall be passed upon and accepted in panels of four by the parties, commencing with the plaintiff, which means that the plaintiff shall pass upon the jurors until four have been accepted and tendered to the defendant, when the defendant is to pass upon the jurors until a panel of four is accepted and tendered back. When one panel of four is complete the plaintiff is to pass upon and accept the next panel of four and tender the same to defendant, and so on. The plaintiff is not called upon to tender a second panel of four to the defendant before the defendant has tendered back the first

panel of four, (*Spies* v. *People*, 122 Ill. 1,) but when four are taken by both sides the plaintiff must go ahead with the next panel. The ruling was wrong, but the rights of the defendant do not appear to have been prejudiced in any way by it and therefore it is not ground for a reversal.

The defendant objected to a question as to where the wife and children of the deceased were on the evening of the accident, and the court overruled the objection. Two witnesses had testified, without objection, that the home of the deceased was in Rantoul, and the answer to this question was that the wife and children were at home. The deceased was going home and the natural inference would be that his family were there. The objection is really directed against the argument made to the trial court in opposition to the objection, but the court did not endorse what was said in the argument in any way and there was no error in the ruling.

Defendant objected to the ordinance because the certificate of the clerk was not dated. The certificate showed when the ordinance was passed and published and was complete in every way. The want of a date was not ground for excluding it.

Bulletins of the defendant stating the time of the arrival of freight trains at Thomasboro were admitted in evidence over an objection that there was no proof that the deceased knew the contents of the bulletins. They were competent to show that the stock train carried passengers who had mileage tickets, in connection with proof that the deceased had such tickets in his pocket and that he went to the station to become a passenger. The inference is that he knew he could go on the train.

There was evidence of facts and circumstances and the character and habits of the deceased from which the jury might rightfully find that he was in the exercise of ordinary care. Signals of the approach of the trains were given, but would not exonerate the defendant from the charge of running its train in violation of the ordinance, which raised

a presumption that the rate of speed was the cause of the injury.

The instructions given at the request of the plaintiff are criticised, but most of the criticisms arise from misinterpreting the natural meaning of the instructions. The first did not direct a verdict for the plaintiff as claimed, but related only to the question of the measure of damages if the jury found the plaintiff entitled to recover. The seventh was not objectionable in stating the measure of damages, nor the eighth as singling out evidence or physical conditions at the place and giving them undue prominence. Two of the instructions might be misleading in some cases and perhaps were not strictly accurate statements of the law. The second informed the jury that they had the right to take into consideration, with the other facts and circumstances proven in the case, the instinct which naturally leads men to avoid injury and preserve their own lives, in determining whether or not the deceased was using due care for his own safety. The instruction made no reference to the evidence concerning the character and habits of the deceased in respect to care, but stated the broad proposition as applying to all men. It is true that there is an instinct of self-preservation common to all and that such instinct raises a presumption against an affirmative act tending to destroy life, such as suicide, and raises a presumption as to the conduct of a person where there is a known danger to be avoided. The presumption is based upon human experience that a man will, in the presence of danger, act in accordance with the instinct of self-preservation, but that instinct is only operative when danger is perceived. The law recognizes that there are persons who are careless, heedless and inattentive as well as those who are prudent and careful, and that the instinct of self-preservation does not uniformly lead men to exercise care to ascertain whether conditions exist which are likely to inflict injury. To establish and apply a general presumption in favor of care would obviate the ne-

cessity of making proof of the fact, which this court has uniformly held must be made. Where there is no eye-witness to the killing of a person, his administrator may establish the exercise of ordinary care on the part of the deceased by the highest proof of which the case is capable. (*Missouri Furnace Co.* v. *Abend,* 107 Ill. 44; *Chicago and Atlantic Railway Co.* v. *Carey,* 115 id. 115; *Illinois Central Railroad Co.* v. *Nowicki,* 148 id. 29.) In the latter case it was said that where no one saw the killing, direct testimony as to care is not necessary but it may be inferred from the circumstances of the case. Reference was made to decisions of the courts of two other States relating to the instinct of self-preservation, but their views were not endorsed except in connection with evidence as to the character and habits of the deceased, which might make the presumption applicable to the particular individual. In the fourth instruction the jury were told that they had a right, in determining the question of care, to take into consideration that the deceased had the right to presume the train would probably not exceed the speed allowed by the ordinance. That instruction was perhaps based on the authority of *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Baddeley,* 150 Ill. 328, where a single engine had left a construction train and was on its way to Urbana and there was no reason to suppose that the party injured knew the rate of speed. Of course, a person may presume that a railroad company will not violate the law unless he knows to the contrary, and the instruction was applicable to the case where it was given, but no one can presume a fact against his own knowledge, and in the case of a regular train habitually running at a high rate of speed, one who knew the fact could not presume the contrary. This train was a new one, and we find nothing in the record to indicate that the deceased knew about any habitual violation of the ordinance by those who ran the train. In view of all the evidence we do not think that these instructions were misleading in this case.

There was no error in modifying instructions tendered by the defendant or the special interrogatory. The instructions as modified were correct, and the interrogatory was substantially the same after the court had modified it as before.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*