### Ida L. Casper, Administratrix, Appellee, v. Illinois Central Railroad Company, Appellant.

1. CONTRIBUTORY NEGLIGENCE—*crossing railroad tracks.* Held, that under the evidence it was not negligence *per se* for the plaintiff's intestate to go upon the railroad track in question at the time and in the manner in which he did.

2. INSTRUCTIONS—*when upon ordinary care erroneous.* An instruction upon the subject of ordinary care which permits the jury to take into consideration instincts of self-preservation is erroneous where there was an eye witness to the accident in question.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Ford county; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the November term, 1908. Reversed and remanded. Opinion filed June 28, 1909.

CLOUD & THOMPSON, for appellant; JOHN G. DRENNAN, of counsel.

SCHNEIDER & SCHNEIDER and RAY & DOBBINS, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case for the recovery of damages resulting from the death of the plaintiff's intestate, alleged to have been occasioned by the negligence of the defendant. A trial by jury resulted in a judgment against the defendant for the sum of $2,500, to reverse which this appeal is prosecuted.

The declaration contains four counts, in each of

which it is averred that while Marion Casper, on October 6, 1906, was, with due care, driving a wagon drawn by mules across the railroad track at Randolph street in the city of Champaign, a train of cars of the defendant struck the wagon, whereby the deceased was killed. The negligence charged in the first count was that the defendant well knowing that the crossing in question was frequented by a large number of persons hourly, and subject to heavy traffic, failed to ring a bell or blow a whistle on the engine while it was approaching the said crossing. The second count charged the failure to ring a bell or sound a whistle for a distance of eighty rods before reaching the crossing, contrary to the statute; the third count, the running of the train at a speed prohibited by an ordinance of the city of Champaign, and the fourth count, the failure to maintain gates at Randolph street as required by ordinance. At the close of the evidence the court withdrew from the jury the evidence given under the fourth count, because of the absence of proof that defendant had been notified to erect and maintain gates.

The evidence discloses that the defendant's railroad entered Champaign from the west. As it approached and crossed Randolph street it used one of the tracks of the Wabash Railroad Company, which crossed Randolph street in a southeasterly direction. Some sixteen trains used such crossing daily, a number passing in the early evening. For about a year prior to his death Casper had been employed in driving a delivery wagon, during which time he had used the crossing, with his team, from four to six times daily. On the evening of October 6, 1906, while he was crossing Randolph street, he was struck by one of the defendant's east-bound passenger trains, and instantly killed. There was the usual conflict in the evidence relative to the speed of the train, and upon the question as to whether or not the statutory signals were given. The jury found with the plaintiff upon these issues, and such finding was not unwarranted by the evidence. It is contended by counsel that there is an

entire absence of proof showing or tending to show due care on the part of Casper; that on the contrary it was shown by full and competent proof that he was grossly negligent in approaching and going upon the track in the way the evidence shows he did, and that the court therefore erred in refusing to direct a verdict in favor of the defendant.

Schudder, a witness called by the defendant, testified in substance that shortly before the train arrived at the Randolph street crossing, he was walking north near the track and heard the train coming; that he stopped near the track and waited there until the train struck the wagon in which Casper was riding; that as the train approached him he heard a wagon approaching from the south; that the team was traveling at a fast trot and the striking of the mules' hoofs and the rattle of the steel-tired wagon upon the new pavement made a great deal of noise; that when he first saw the team it was from 60 to 100 feet from the track; that as the train approached the street crossing the team was moving faster than the train; that it was trotting as fast as it could; that upon discovering the team, witness ran back from the track toward it and waved his hat and cried "Whoa" a number of times as loud as he could, but that the team paid no attention to him; that when it got nearly to the track the mules broke into a run and veered suddenly to the east sidewalk and then north again across the track; that the team crossed over, but the wagon was struck at about the front wheels; that he watched the team from the time he first saw it until it was struck; that the wagon was a heavy delivery wagon having a top that extended as far as the dash-board; that he, witness, was on the east side of the wagon, and did not see Casper, probably because the curtain on the side was down. Isbell, the engineer of the train, a witness for the defendant, testified that when he got within 30 feet of the street he saw the team approaching the track in a fast trot, and saw Casper in the wagon; that he did not have hold of the lines, which were hanging

from the top as if tied there; that he was sitting on the seat with his head down apparently paying no attention to his surroundings, and making no effort to check the team; that as soon as he saw the team approaching the track he applied the emergency brake but too late to avoid the collision.

We are not prepared to say as a matter of law, that the conduct of Casper under the circumstances was negligence *per se.* The issue was therefore one of fact and was properly submitted to the jury. Winn v. C., C., C. & St. L. Ry. Co., 239 Ill. 132. It is obvious, however, from the evidence detailed, that the question was a close one, and the jury should have been accurately instructed as to the rules of evidence applicable in determining such issue.

The court by instruction number 7 given at the instance of the plaintiff, told the jury that the law did not require the plaintiff to produce direct and positive testimony showing just what the deceased was doing at the time in question; that the law required only the highest proof of which the case was susceptible, and that the jury might take into consideration, with all the facts and circumstances in evidence, if any, the instincts which naturally lead men to avoid injury and preserve their own lives, in determining whether or not Casper was using ordinary care for his own safety at the time in question. The instruction correctly stated the law applicable to cases where there is no eye witness to the killing of a person, but where, as in the present case, there were eye witnesses, no presumption exists as to the conduct of the person where there is a known danger to be avoided. Collison v. I. C. R. R. Co., 239 Ill. 532. The witness Scudder saw the occurrence and described it in all its details. His testimony was corroborated by that of the engineer, and the plaintiff offered no evidence to the contrary, nor were there any circumstances arising out of the evidence which tended to contradict them. The instruction was therefore improper and giving the same constituted prejudicial error.

Other grounds for reversal are urged and argued, but inasmuch as the cause must be remanded for another trial it is not necessary for us now to determine whether or not the same are meritorious. For the error indicated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Mr. Justice PHILBRICK took no part in the consideration of this case.