ARTHUR G. STOLLERY *et al.* Admrs., Appellees, *vs.* THE CICERO AND PROVISO STREET RAILWAY COMPANY *et al.* Appellants.

*Opinion filed December 22, 1909—Rehearing denied Feb. 4, 1910.*

1. NEGLIGENCE—*dangerous attractions on unguarded premises—liability of the owner for injury to children.* Unguarded premises supplied with dangerous attractions are regarded as holding out an implied invitation to children, which will render the owner liable for injuries to them even though they be technically trespassers; and the question whether such premises are attractive to children is one for the jury.

2. SAME—*exercise of due care need not be proved by direct evidence.* While the plaintiff in an action for the negligent killing of his intestate has the burden of proving the exercise by the deceased of due care to avoid the injury, yet such fact need not be proved by direct evidence, and if there were no eye-witnesses to the accident, care on the part of the deceased may be proven by the highest proof of which the case is capable, including his habits and other pertinent circumstances.

3. SAME—*what tends to show that death was caused by an exposed coal conveyor.* Proof that the plaintiff's intestate, a boy of ten years, was last seen alive standing near an idle coal conveyor, which thereafter started up; that the frozen body of the boy was found two days later, with his arm and clothing caught in the conveyor and one side of his face, next to the exposed sprocket wheel, worn off, tends to show that death was caused by such conveyor.

4. Evidence—*coroner's verdict admissible though his name follows those of jurymen.* The fact that the name and seal of the coroner are attached to the verdict under the names of the jurymen does not render the verdict inadmissible.

Dunn, Cartwright and Hand, JJ., dissenting.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. W. Pinckney, Judge, presiding.

John A. Rose, and Frank L. Kriete, (W. W. Gurley, of counsel,) for appellants.

David K. Tone, and H. M. Ashton, for appellees.

Mr. Justice Carter delivered the opinion of the court:

This is an action on the case brought in the circuit court of Cook county against appellants for wrongfully causing the death of appellees' intestate, a boy about ten years of age. A judgment was obtained in the trial court for $4000, which the Appellate Court affirmed, and this appeal followed.

The appellants occupied in Oak Park, Illinois, a block bounded by Lake street, Harvey avenue, North boulevard and Cuyler avenue. On the south-east corner of this block was the power house of appellants. West of the southern portion of the power house was a building called the coal-bin. At the north end of the coal-bin was a frame made of timbers ten inches square which carried and supported certain sprocket wheels about thirty-one inches in diameter, with teeth some three and one-half inches in length, forming a part of a coal conveyor. Operating upon these sprocket wheels were two endless chains, between which ran strips of metal, which scraped and carried the coal from the coal-bin to the boiler room in the power house. This framework, with the sprocket wheels, was outside the build-

ings, unprotected, in plain view from the street, access to it from the street being open and unobstructed. Plaintiffs' intestate was last seen alive on the afternoon of March 2, 1904. On March 4 he was found dead, his arm and clothing caught between one of the sprocket wheels and an adjacent beam of the supporting framework, about three feet from the ground. When found his body was frozen, his clothing torn and one side of his face was worn away, apparently by the rubbing of the sprocket wheel.

The declaration alleges and the evidence tends to prove that this dangerous machinery was left unguarded and unprotected in a thickly-settled neighborhood, on land that was unfenced; that appellants knew that children had been in the habit of playing about said machinery, and that while in the exercise of ordinary care for his own safety, appellees' intestate was caught by said sprocket wheel and killed on March 2, 1904.

At the close of the plaintiffs' evidence, and again at the close of all the evidence in the case, appellants asked the court to instruct the jury to find a verdict in their behalf. These instructions were refused. Appellants contend that there is no evidence justifying the verdict,—first, because it does not appear that the negligence alleged and proved was the proximate cause of the death; second, because it does not appear that deceased was in the exercise of reasonable care; third, that it does not appear that the child was attracted by said machinery; and fourth, it does not appear that appellees' intestate died from injuries sustained by him from said conveyor.

Under the decisions of this State unguarded premises supplied with dangerous attractions are regarded as holding out an implied invitation to children, which will make the owner of the premises liable for injuries to them even though the children be technical trespassers. Whether or not such premises are attractive to children is a question for the jury. (*City of Pekin* v. *McMahon,* 154 Ill. 141;

*Siddall* v. *Jansen,* 168 id. 43; *True & True Co.* v. *Woda,* 201 id. 315.) While in an action of this nature the burden is upon the plaintiff to show the exercise of ordinary care to avoid the injury, to prove this, however, does not require direct evidence as to the injuries, but such care on his part may be inferred from the facts and circumstances in the case. Where there is no eye-witness to the killing of a person, his administrator may establish the exercise of ordinary care on the part of the deceased by the highest proof of which the case is capable, including the habits of deceased and any other facts and circumstances from which the jury might rightfully find that he was exercising such care. *Collison* v. *Illinois Central Railroad Co.* 239 Ill. 532; *Chicago and Alton Railroad Co.* v. *Wilson,* 225 id. 50; *Illinois Central Railroad Co.* v. *Nowicki,* 148 id. 29; *Baltimore and Ohio Southwestern Railway Co.* v. *Then,* 159 id. 535; *Chicago, Burlington and Quincy Railroad Co.* v. *Gunderson,* 174 id. 495; *Illinois Central Railroad Co.* v. *Cozby,* 174 id. 109.

The proof tends to show that the conveyor was run intermittently as coal was needed in the power house; that about forty feet from this framework there was a well on these premises, to which children were in the habit of coming for water; that on March 2, between one and two o'clock in the afternoon, a playmate of appellees' intestate, who was at this well for water, saw him near the north end of the framework, the conveyor at that time being stationary; that a few minutes later she looked towards the conveyor and it was moving, but she did not then see the boy. He was not seen from that time until his body was found by a policeman on March 4. He was an intelligent and ordinarily careful boy, and could easily, when the machinery was not moving, have climbed on the framework, which was only three feet from the ground. The mother of appellees' intestate was a widow, who had moved to a house near the power plant the day before the accident. Coun-

sel for appellants contend that there is no evidence that she had looked for the boy after he had disappeared on March 2, and therefore they argue that she had not used due care in attending to him. We think there was such evidence. There was also evidence tending to show that the death was caused by the conveyor, and not, as contended by counsel, that it was caused by other means and the body afterwards placed where it was found. The conveyor was set in motion soon after appellees' intestate was seen standing by it. He was never seen again alive. The position of his body and condition of his face and clothing would indicate that he was caught by the sprocket or chain and thereby forced into the position in which he was found. The argument of counsel that if the body had been there from March 2 until March 4 it would certainly have been seen by someone from the street is not borne out by the evidence. The rule of law is, as already stated, that the proof of ordinary care on the part of appellees' intestate, as well as all the other elements of the action charged in the declaration, may be established by circumstantial evidence. The evidence tended on all these points to sustain the declaration. It cannot be said, as a matter of law, that the death was not caused in the manner alleged.

Appellants further contend that the trial court committed error in allowing the verdict of the coroner's jury, which found that the deceased came to his death by being caught and crushed by the conveyor, to be introduced in evidence; that it was not shown it was the verdict of the coroner's jury; that it was not shown to have been filed with the circuit clerk, as provided by paragraph 17 of the chapter on coroners, (Hurd's Stat. 1908, p. 519,) and also because it has the coroner's name and seal attached, it being argued that the law does not authorize the coroner to attach his name to the verdict along with the jurymen. The proof shows that this was the verdict of the coroner's jury. This verdict is, in substance and in form, very similar to

the one introduced in *United States Life Ins. Co.* v. *Vocke*, 129 Ill. 557. The coroner in that case, as in this, attached h.s name to the verdict under the names of the jurymen. Under the reasoning of that case the verdict was properly admitted in evidence.

Appellants further contend that instruction 9 offered by them was improperly refused. We do not think the refused instruction was in all respects correctly drawn, but all of the proper elements of the instruction were substantially covered by other instructions given for appellants. The same may be said of refused instruction No. 10, concerning which appellants complain.

We find no material error in the record. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

DUNN, CARTWRIGHT and HAND, JJ., dissenting:

The evidence does not show when or how the deceased met his death or the circumstances attending it. He was found hanging by his right arm, which was caught between the wheel and the framework. When or how he got there is unknown. He may have climbed upon the framework when the machinery was not in motion, have fallen, been caught and held fast, and, being unable to free himself, have perished from exposure. The fact that there was no blood upon the wheel or sprockets, or elsewhere, indicates that he could not have been killed by the machinery. This coal conveyor was situated in the middle of a block, the whole west side of which was occupied by a car barn and the south one hundred and fifty feet, at the east side, by a power house,—a brick building forty feet high. The space between these buildings, except a narrow passageway along the east side of the car barn and fifteen feet of the south side of the block, was occupied by a coal-bin, which began fifteen feet north of the south boundary of the lot and extended north about eighty feet along the west

side of the power house, which extended a considerable distance north of the coal-bin. The passageway next to the car barn was not a public alley, and there is no evidence of any use made of it by anyone. The framework to which the wheels were attached was in the angle between the power house and the coal-bin, just outside the north end of the coal-bin and at least one hundred feet from the street north of it. It was enclosed on three sides by the power house, coal-bin and car barn, except for the narrow passage. It was forty or fifty feet from the well, which was north of the power house and east of its west side and which furnished water to the power house. The only negligence claimed to have been shown is the maintaining of this frame, with the wheels and chains used to convey the coal in this situation.

The appellants were under no obligation to keep their premises safe for the benefit of persons coming upon them merely for their own pleasure or purposes. As to such persons it was not negligence to maintain and operate the coal conveyor in the manner in which it is shown it was maintained and operated in this case. The majority opinion bases the liability of appellants upon the principle announced in what are known as the "turn-table cases" and followed in the cases cited in that opinion. The principle is, that the owner of premises adjacent to a public street or place, having thereon, near such public street or place, dangerous machinery or other dangerous objects of a character to attract children too young to be capable of exercising ordinary care, and knowing that such children will probably be attracted by it, must use ordinary care to protect them from injury. The principle is not applicable here. The coal conveyor was not near the street or in a situation where it was likely to attract attention. It was not of a character to attract children, and the deceased was not too young to be capable of exercising ordinary care. In the cases where a liability has been found to exist because

of the existence of·unguarded machinery, the machinery has been of a character to attract children by reason of their love of motion by other means than their own loco-motion, as turn-tables or elevators. There was nothing of that character about this coal conveyor. The youngest child could not regard it as adapted for riding upon. The deceased was ten years old. The evidence shows that he was a bright, active, intelligent boy. He went to school and on Saturday used to work, going out on a wagon de-livering laundry. There is no evidence that he was not of sufficient mental capacity to see and avoid danger, but the evidence was all the other way. As to such a boy the prin-ciple of the turn-table cases does not apply. In our judg-ment there was no evidence fairly tending to prove that the deceased came to his death through the negligence of the appellants.

The following instruction was requested by appellants and refused:

9. "The court instructs the jury that the defendants are not liable in this case, and you cannot find a verdict of guilty against the defendants unless you find, from a pre-ponderance of evidence, first, that the chain and sprocket wheels in question were dangerous; second, that the de-fendants knew the dangerous character of said wheels and chains, or by the exercise of ordinary care would have known·thereof, before the second of March, 1904; third, that the defendants should have anticipated, prior to March 2, 1904, that plaintiffs' intestate, or other children, would become caught in or injured or killed in and by means of said chain and sprocket wheel. If either one of the above propositions is not established by a preponderance of the evidence your verdict must be not guilty."

This instruction should have been given. The facts mentioned in it as necessary to be proved were essential to recovery. The jury should have been so informed, and we do not think the error was cured by the instructions given.