## Andrew P. Anderson, Administrator, Appellant, v. Metropolitan West Side Elevated Railway Company, Appellee.

### Gen. No. 16,495.

1. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside as against the evidence unless clearly and manifestly so.

2. MASTER AND SERVANT—*how question of fellow servants determined.* Whether the relation of fellow servants exists is a question of fact to be determined by the jury. Where, however, the facts are not in dispute and all reasonable minds must inevitably reach the same conclusion therefrom, the question becomes one of law to be decided by the court.

3. INSTRUCTIONS—*when giving, upon fellow servant doctrine, not error.* It is not reversible error to instruct a jury upon the law of fellow servants, where that question is one of the issues presented by the pleadings.

4. EVIDENCE—*when habits of care incompetent.* In a death case where there are no eye-witnesses to an accident it is proper to introduce testimony as to what the habits of the deceased were as a careful and sober man, as tending to establish that such deceased exercised ordinary care on the occasion under investigation, but this does not mean that such evidence is competent if no witnesses saw what the deceased was doing at the instant of the accident. If there were witnesses who saw what occurred immediately before and immediately after the accident, the evidence as to habits of care may properly be rejected.

Action in case. Appeal from the Superior Court of Cook county; the HON. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate

Anderson v. Met. West Side El. Ry. Co., 170 Ill. App. 210.

Court at the March term, 1910.  Affirmed.  Opinion filed May 9, 1912.
Rehearing denied May 23, 1912.  *Certiorari* denied by Supreme Court
(Making opinion final).

EDMUND H. SMALLEY, for appellant.

ADDISON L. GARDNER, for appellee; W. W. GURLEY, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This is an action for damages for personal injuries, resulting in death, brought in the Superior Court of Cook county by the administrator of the estate of Albert J. Anderson, deceased, appellant, and hereinafter referred to as plaintiff, against Metropolitan West Side Elevated Railway Company, a corporation, appellee, and hereinafter referred to as defendant. The jury returned a verdict finding the defendant not guilty, and on January 29, 1910, a judgment was entered upon the verdict, from which judgment plaintiff appealed to this court. It appears that this was the third trial of the cause by a jury. In the first and second trials the jury disagreed.

The facts of the case are substantially as follows: Albert J. Anderson was killed on the afternoon of October 16, 1906, while at work on the elevated structure of defendant's railroad, at a point between Marshfield Avenue and Laflin Street, in the City of Chicago. East of Marshfield Avenue the railroad has four tracks, numbered from north to south 1, 2, 3 and 4, which run parallel to a point west of the scene of the accident, where they diverge in a series of crossings. The first of these crossings is a junction of the two middle tracks, Nos. 2 and 3. After the two middle tracks cross each other at this junction they again diverge gradually, continuing east, until separated by a distance of about twenty feet, when they again become parallel, and are each paralleled by another outer track. East of said

Anderson v. Met. West Side El. Ry. Co., 170 Ill. App. 210.

junction No. 2 track becomes No. 3 track, and *vice versa*. For some distance east of this junction, the elevated structure between these gradually diverging tracks, Nos. 2 and 3, is boarded over, forming a walk or platform on which, at a distance of a little over 100 feet from said junction, stands a small interlocking shanty, and just east of this is a still smaller oil house. East of this oil house the space between said inner tracks, Nos. 2 and 3, is open, with the exception that from the platform, on which said interlocking shanty and oil house stand, there extends east for a distance of about ninety feet, along the north side of track No. 3, a board walk constructed of planks laid parallel with said track on stringers, level with the ties, the surface of which walk being some five inches below the top of the rails. This board walk extends to a signal or target which stands in the center of the walk at the east end, a little over three feet north of the north rail of said track. Along the north side of this board walk there runs an iron hand railing, and this railing is four feet nine inches from the north rail of said track, No. 3. There is a distance of thirty-two inches between this hand railing and the side of a car standing or passing on said track, No. 3. The signal or target consisted of an iron base about a foot square and nine inches high, supporting an iron pipe, at the top of which was a cap containing a lamp and holding a signal arm. In all it was about five feet high. East bound Logan Square and Humboldt Park trains pass Marshfield Avenue on track No. 2 and cross over to track No. 3 at said junction. The distance from Marshfield avenue to said junction is about 1,700 feet, and the evidence tends to show that said signal or target on said board walk would be in the sight of motormen on trains coming from Marshfield Avenue the entire distance with the exception of a space possibly of 200 feet, when said interlocking shanty would obstruct the view. At the time of the accident Anderson was on the east end of

said board walk near the signal or target, which he and two other men were engaged in rewiring. He had been there about half an hour. These two other men were underneath the elevated structure, one, O'Rourke, on the ground at the foot of a ladder, the top of which rested against one of the girders, and the other man, Kilroy, was on said ladder, near the top, directly underneath said board walk, in such a position that he could reach with his hand the floor of the walk at the base of said signal or target. Kilroy was taking wires which Anderson from above was shoving down to him through insulators in bores in the walk at this point. While all three men were so at work, a train in charge of a motorman, named Thompson, came from the west on track No. 2, crossed over said junction of said two center tracks and approached said signal or target, where said men were at work, running on track No. 3, south of said board walk. The train consisted of two cars and, according to Thompson's testimony, was running about fifteen miles an hour. Thompson further testified, substantially, that he first saw Anderson when his motor car was about at said junction, some 200 feet west of said signal or target; that Anderson was then at the east end of said board walk, north of track No. 3, near said signal or target, in a stooping position, with his hands on his knees, looking down through the walk, his head toward the south; that in said position Anderson was clear of the track; that by the time Thompson's train had run further east and was about abreast of said interlocking shanty, Anderson had straightened up and was standing on the walk with his back to said iron railing, and with his face turned partly toward the approaching train; that Thompson did not blow any whistle but that he watched Anderson until the front of the motor car was within about eight feet of Anderson, when Thompson's view of Anderson was cut off by the side of the motor cab window; and that during this intervening time, while

Anderson v. Met. West Side El. Ry. Co., 170. Ill. App. 210.

the train was running from said interlocking shanty and until the time when Thompson's view of Anderson was cut off, as aforesaid, Anderson did not change his said standing position. The testimony also tends to show that just after the rear of the train had passed the end of said board walk, the noise of escaping air attracted the attention of Kilroy and O'Rourke, and they then saw Anderson's body falling from the east end of said board walk to the ground below, and that Anderson's body in so falling had struck and broken an air pipe at the end of said board walk; that Anderson was almost instantly killed, receiving a fracture at the base of the skull behind and below the right ear; that the wound was apparently inflicted by a blow from a sharp corner of some part of one of the cars of the train. Kilroy testified, substantially, that he saw Anderson just before he was struck; that he was kneeling on said board walk, pushing wires down to Kilroy; that he was on one knee leaning over towards said No. 3 track; that he first saw the train approaching from the west when it was about abreast of said interlocking shanty, and that then Anderson was kneeling; that "then he raised;" that Kilroy was facing east as the train passed and did not see what part of the train struck Anderson and that the train was running "rapidly." Anderson had been in the employ of the railroad company for about two years previous to his death as a repair man on wires and telephones, and later as a foreman of wiremen, and his duties during all of this period called him to various points along the line. He, as an electrician, had nothing to do with the running of the trains. At the time of the accident his health was excellent. He had been working at said signal or target for about half an hour before he was killed, and trains had been passing east on said track No. 3 every minute or so during that period. The company had no rule providing for the safety of or providing for the warning of men working on a track.

Rule No. 180 of the defendant was offered in evidence as follows: "A succession of short blasts of the whistle is an alarm for persons on the track, and calls attention of the trainmen to danger ahead." It was admitted that the motorman, Thompson, blew no whistle, nor gave any warning, as he approached said signal or target, and that there was no flag on the track to call the attention of the motorman to the fact that anyone was working on the elevated structure at that point.

It is contended by counsel for plaintiff that the judgment of the trial court should be reversed and a re-trial had because the court erred (1) in refusing to grant a new trial on the ground that the verdict is against the weight of the evidence, (2) in submitting to the jury by an instruction the question whether or not the deceased, Anderson, and the motorman, Thompson, were fellow servants, instead of instructing the jury that such relations did not exist, (3) in refusing to admit certain evidence of the good habits of the deceased, (4) in refusing to admit certain evidence of exclamations made by an alleged eye-witness at the time of the accident, (5) in refusing to admit certain evidence that there was no provision in the company's rules for warning flags for electricians working on the track or elevated structure, (6) in refusing to admit certain evidence as to the rate of speed of the train, (7) in refusing to admit certain evidence as to the dangerous position in which the deceased was just prior to the accident, (8) in admitting certain evidence as to noise made by a train passing over the interlocking switches, (9) in admitting certain evidence as to the general construction of cars similar to those of the train run by Thompson at the time and place of the accident, (10) in giving certain instructions offered by the defendant and in refusing certain instructions offered by plaintiff, and (11) in refusing to set aside the verdict on the ground of alleged newly discovered evidence.

No good purpose, it seems to us, will be served in

discussing all of the above points made by counsel for plaintiff. It is sufficient to say that after careful examination we have concluded that in none of the above particulars was prejudicial error committed by the trial court.

As to the objection that the verdict is against the weight of the evidence, it was for the jury to say, under all the evidence, whether the defendant was guilty of negligence as charged, and whether the deceased was exercising due care for his own safety at the time of the accident, and their verdict was for the defendant on these issues, and in the two former trials, on the same issues, the jury on each occasion disagreed. The evidence tends to show that the deceased was not working on the track but on said board walk north of the track, where there was ample room for him to avoid being struck by a passing train; that he had thus been working for about half an hour, during which time many trains had passed him at frequent intervals, and he must have known that other trains would at short intervals also pass him, and that during said half hour he had been safely doing the same kind of work at which he was engaged when struck by some part of the train driven by Thompson. It cannot, therefore, be said the verdict is manifestly against the weight of the evidence.

Nor do we think that the trial court erred in giving an instruction to the jury containing, as we believe, a substantially correct statement of the law concerning fellow-servants, instead of instructing them, as counsel contends should have been done, that as between the deceased and the motorman, Thompson, the relation of fellow-servant did not exist. "The question whether servants of a common master are fellow-servants within the meaning of the law is usually a question of fact. If, however, the facts are not in dispute and all reasonable men would readily agree as to the conclusions which should be drawn from the admitted facts,

the question whether the relation of fellow-servants exists in a given case becomes a question of law." Linquist v. Hodges, 248 Ill. 491, 501. Under the evidence in this case we cannot say that "all reasonable men would readily agree" as to the relationship existing between the deceased and the motorman, Thompson, at the time of the accident. Furthermore, the question as to whether or not the deceased and Thompson were fellow-servants was one of the issues presented by the pleadings, and in such case it is not reversible error to instruct the jury upon the law of fellow-servants. St. Louis A. & T. H. R. R. Co. v. Eggmann, 60 Ill. App. 291; 161 Ill. 155, 160.

Complaint is made that the court refused to allow certain witnesses to answer certain questions relative to the good habits of the deceased. We understand it to be the law that, where there are no eye-witnesses to an accident resulting in death, it is proper to introduce testimony as to the habits of the deceased as a careful and sober man as tending to establish that the deceased exercised ordinary care on the occasion under investigation. Illinois Central R. R. Co. v. Nowicki, 148 Ill. 29; Dallemand v. Saalfeldt, 175 Ill. 310, 315; Illinois Central R. R. Co. v. Prickett, 210 Ill. 140; Collison v. Illinois Central R. R. Co., 239 Ill. 532; Stollery v. Cicero etc. Ry. Co., 243 Ill. 290. We do not think the circumstances of this case are such as to render the introduction of such testimony either necessary or proper under the rule as enunciated in the above cited cases. While seemingly no one saw what Anderson was doing at the *instant* he was struck or what struck him, he was observed by several witnesses immediately before and immediately after he was struck.

For the reasons indicated the judgment of the Superior Court is affirmed.

*Affirmed.*