## M. S. Rankin, Administrator, Appellee, v. Frederick A. Delano et al., Receivers, Appellants.

RAILROADS, § 779*—*instruction as to presumption of due care from instinct of self-preservation*. An instruction in an action against a railway company for the death of a traveler at a highway crossing, where there were no eyewitnesses, that in determining whether the deceased was using due care for his own safety at the time of his death, the jury might, in connection with other facts, take into consideration the instinct of self-preservation, *held* erroneous, since it did not limit the jury to the consideration of the facts in evidence bearing on the question of due care.

Appeal from the Circuit Court of Piatt county; the Hon. WILLIAM G. COCHRAN, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed April 16, 1915. Opinion modified May 26, 1915.

CREA & HOUSUM, F. M. SHONKWILER and C. F. MANSFIELD, for appellants; J. L. MINNIS and N. S. BROWN, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

A. L. PHILLIPS and HERRICK & HERRICK, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action on the case brought by M. S. Rankin, administrator of the estate of Charles N. Gragg, deceased, against Frederick A. Delano, William K. Bixby and Edward B. Prior, receivers of the Wabash Railroad Company, for wrongfully causing the death of plaintiff's intestate. The declaration contains four counts. The first avers careless and negligent operation of a train which struck and killed the intestate. The second avers a violation of the statute in failing to ring a bell or blow a whistle for the crossing where the accident occurred. The third avers that defendant in the village of Osman, maintained a main track and two side tracks on the east side of the main track across a public highway; and negligently maintained or permitted to be maintained, in the operation of said railroad, a scale house on the east side of their right of way within eight feet of the east track and ten feet south of the highway; and negligently permitted to be maintained on their right of way, fifty-five feet south of the scale house and eleven feet east of the east track, an engine house; and negligently permitted to be maintained on their right of way, four feet east of the east track and eight feet south of the engine house, an elevator; and negligently permitted to be maintained on the right of way, ninety feet south of the elevator, certain coal bins four feet east of the east track, all said buildings being within fifteen feet of the main track; and negligently permitted a car to stand on the east track two hundred feet south of the highway, and that there were buildings located south of the highway just east of the said buildings near to said tracks; and avers that the negligence of defendant in maintaining buildings on the right of

way east of the railroad track and south of the crossing prevented deceased from seeing, in time to avoid a collision, defendants' train which approached said crossing at a dangerous and excessive speed, to wit, fifty miles an hour, etc. The fourth count is similar to the third except that it avers that the scale house also is on the right of way. A jury found the defendant guilty and assessed plaintiff's damages at $10,000. Judgment was rendered on the verdict and the defendants appeal.

Osman is a small unincorporated village containing about thirty dwellings and is located on a public highway about sixty feet wide which runs east and west. The Wabash railroad runs through the village in a straight line. Its general course towards the north is about halfway between north and northeast, and to the south midway between south and southwest. The right of way south of the public highway is sixty-six feet wide. The main track is in the center of the right of way. There are two side tracks on the east side of the main track. The east side track is called the house track, the east rail of which is three feet from the east line of the right of way and twenty-seven and one-half feet from the east rail of the main track. Midway between the main track and the house track is the passing track. South of the highway and east of the right of way there is a building about twelve feet square called a scale house. The west side of the scale house is eight and one-half feet from the east rail of the house track and its north side is about twenty feet from the south side of the public highway. About fifty feet south of the scale house is the engine house. It is about the same size as the scale house and the same distance from the tracks. The elevator is a few feet south of the engine house. Its west line is east of the right of way. About fifty feet south of the elevator are some coal sheds which are also east of and close to the right of way. South of the highway

and east of the railroad and scale house are a residence and store combined. East of the residence and store is a vacant lot except that there is a barn on the back end of the lot. East of the lot with the barn is a dwelling house and then further east are other buildings. The railroad is on a level with the adjacent land. A church stands a little over a block east of the crossing. There are no buildings on the right of way south of the highway. A car was standing on the house track about one hundred and seventy-five feet south of the crossing, near the coal sheds. On the night of May 26, 1912. Charles N. Gragg, a farmer, thirty-three years of age, with good eyesight and hearing, who lives southwest of Osman, attended church in Osman with his wife and little daughter. The church services closed about nine o'clock. The night was cloudy but the moon shone occasionally. Gragg and his family after church talked with some of his friends, and then got into their single, top buggy with side curtains on, which had been hitched near the church, and drove west towards the crossing. Two young men who had their rig hitched about fifty feet east of the right of way testified that he drove by them in a kind of sweeping trot; they did not see him after he drove on the right of way.

A freight train consisting of a locomotive and fifty-four cars came from the south on the main track. The engineer was in his cab on the east side of the engine and did not see the rig until just as it drove in front of the engine and was struck by it. The train was not stopped until it had passed about two hundred feet beyond the crossing. When the train was stopped Gragg was found dead on the pilot of the engine, which was then about half a mile past the crossing. The daughter was also on the pilot of the engine. His wife was found by the side of the railroad not far from the crossing.

The evidence is very conflicting as to the speed of

the train; different witnesses testify the speed was from twenty to fifty miles an hour, the engineer testifies it was twenty-five miles.

Several witnesses testify the bell was ringing, while several testify they did not hear a bell, although many of them say they heard the rumble of the train two or three minutes before it reached the crossing. There is also conflicting evidence regarding the whistle. The engine had an oil head light burning, which had been lighted at Bement.

There was no witness who testified to what the deceased did after passing the two witnesses fifty feet from the right of way. While the engineer saw him the instant he drove in front of the engine, the witness could not know anything as to the actions or care exercised by the deceased. Evidence was introduced showing that the deceased was a sober, industrious man, who did not use tobacco. There was no direct evidence that the deceased habitually exercised ordinary care.

Error is assigned on the following instruction given at the request of appellee:

"The court instructs the jury that the plaintiff is not required to produce direct and positive testimony showing just what the deceased was doing at the time of the accident and immediately prior to the time that he received the injury that caused his death; that the law requires only the highest proof of which the particular case is susceptible, and the jury may take into consideration, with other facts, the instincts which naturally lead men to avoid injury and preserve their own lives, in determining whether or not the deceased, Charles N. Gragg, was using ordinary care for his own safety at the time, and for a reasonable length of time prior to the time he was injured."

In *Collision v. Illinois Cent. R. Co.*, 239 Ill. 532, an instruction was given informing the jury: "That they had the right to take into consideration, with the other facts and circumstances proven in the case, the instinct

which naturally leads men to avoid injury and preserve their own lives, in determining whether or not the deceased was using due care for his own safety." The instruction is not set out *verbatim*. The court said that "the instruction made no reference to the evidence concerning the character and habits of the deceased in respect to care, but stated the broad proposition as applying to all men. It is true that there is an instinct of self-preservation common to all and that such instinct raises a presumption  *  *  *  as to the conduct of a person where there is a known danger to be avoided. The presumption is based upon human experience that a man will, in the presence of danger, act in accordance with the instinct of self-preservation, but that instinct is only operative when danger is perceived. The law recognizes that there are persons who are careless, heedless, and inattentive as well as those who are prudent and careful, and that the instinct of self-preservation does not uniformly lead men to exercise care to ascertain whether conditions exist which are likely to inflict injury. To establish and apply a general presumption in favor of care would obviate the necessity of making proof of the fact, which this court has uniformly held must be made. Where there is no eyewitness to the killing of a person, his administrator may establish the exercise of ordinary care on the part of the deceased by the highest proof of which the case is capable." In a preceding part of the opinion, referring to this and another instruction, it is stated: "The instructions might be misleading in some cases and perhaps were not strictly accurate statements of the law." In the case at bar the instruction complained of is abstract. It neither confines the jury to the evidence nor refers to a known danger, but tells the jury that they may consider the presumption with other facts. It does not limit the jury to a consideration of the facts in evidence or which bear on the question of due care. In the *Collision* case, *supra,*

there was no question of the negligence of the defendant, the train was running at forty to sixty miles an hour in violation of an ordinance limiting the speed to fifteen miles an hour and the deceased was watching another train approaching.

The nineteenth instruction given for appellants was directly in conflict with the instruction given for appellee. The instruction complained of obviates all necessity of proof from which due care might be inferred. It does not limit the jury to a consideration of facts shown by the evidence and omits the fact that the jury must find from the evidence that the danger was known to the deceased before they can consider the presumption. The giving of it was reversible error, especially when taken in connection with the fourth instruction given at the request of appellee.

·The fourth instruction given for appellee has in it a clause: "Yet in order to find the plaintiff's intestate guilty of contributory negligence, you must believe from the evidence that the deceased, Charles N. Gragg, failed to exercise that care which the law requires, and he is only required by law to exercise such care and foresight as an ordinary prudent man possessing ordinary intelligence would exercise under the same or circumstances similar to those surrounding plaintiff's intestate at both and for a reasonable time previous to the time of the accident." This part of the instruction places the burden of proving the deceased was negligent on the appellants. The rule is, if the evidence is equally balanced so that the jury cannot say on a consideration of it that they believe the deceased was in the exercise of due care the verdict must be for the defendant. The judgment is reversed and the cause remanded because of error in instructions given at the request of appellee.

*Reversed and remanded.*